

# UNITED STATES DISTRICT COURT

FILED
DISTRICT COURT OF GUAM

AUG 20 2020

for the

District of Guam

JEANNE G. QUINATA
CLERK OF COURT

In the Matter of the Search of

*(Briefly describe the property to be searched or identify the person by name and address)*

Information Associated with Apple IDs: marcusunigwe@icloud.com – 10190492555 unigwemarcus@icloud.com – 16597187871 stored at premises controlled by Apple, Inc. (Further described in Attachment A)

)
)
)
)
)
)

Case No. MJ- 20 - 00076

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

Information Associated with Apple IDs: marcusunigwe@icloud.com – 10190492555 unigwemarcus@icloud.com – 16597187871 stored at premises controlled by Apple, Inc. Further described in Attachment A.

located in the _____ District of _____ Guam _____ , there is now concealed *(identify the person or describe the property to be seized):*

See Attachment B which is incorporated herein.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §§ 1343, 1349, & 1956 | Wire Fraud, Wire Fraud Conspiracy, Money Laundering, & Money Laundering Conspiracy |

The application is based on these facts:

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

DAVID ANDERSON, Special Agent, FBI
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____ telephone _____ *(specify reliable electronic means).*

Date: _____ 08/19/2020 _____

_____
*Judge's signature*

City and state: Seattle, Washington

JOHN C. COUGHENOUR, U.S. District Judge
*Printed name and title*

<h1>AFFIDAVIT IN SUPPORT OF<br>AN APPLICATION FOR A SEARCH WARRANT</h1>

I, David Anderson, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), to require Apple Inc. (hereafter "Apple") to disclose to the government records and other information, including the contents of communications and stored data, associated with the above-listed Apple ID that is stored at premises owned, maintained, controlled, or operated by Apple, a company headquartered at 1 Infinite Loop, Cuptertino, CA.  The information to be disclosed by Apple and searched by the government is described in the following paragraphs and in Attachments A and B.

2.      I am a Special Agent with the Federal Bureau of Investigation (FBI) and have been since August 2008. I have twelve years of experience working complex investigations with a specialization in cyber crimes and internet enabled fraud schemes. I am aware of the methods used by criminals to spot and assess potential victims, coerce funds from those victims, and the methods used to facilitate the movement of illicit funds once obtained. My experience shows these individuals are often parts of a larger criminal organization which requires communication and coordination across multiple state and international borders. I have observed the heavy use of messaging applications to communicate how illicit funds should be funneled out of the United States.

1

3.     The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show simply that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4.     Based on the facts as set forth in this affidavit, there is probable cause to believe that the information described in Attachment A contains evidence, instrumentalities, and/or fruits of violations of 18 U.S.C. §§1343, 1349, and 1956, as described in Attachment B.

## BACKGROUND OF INVESTIGATION AND
## FACTS ESTABLISHING PROBABLE CAUSE

5.     On September 6, 2019, the Federal Bureau of Investigation (FBI) Honolulu Division, Guam Resident Agency opened a full investigation based upon a referral from the Guam Police Department that Teresa Adamos Pereda ("PEREDA") was coordinating various fraud schemes targeting, among others, members of a church in Guam. PEREDA was subsequently arrested and, on January 31, 2020, pled guilty to multiple counts of bank fraud in violation of 18 U.S.C. § 1344 in connection with her embezzlement of employer funds as part of a separate but related investigation.

6.     During a custodial interview on 11/18/2019, PEREDA stated in December 2015, PEREDA was approached by an individual using the name "Jacqueline Smith" on Facebook who stated she wanted to give PEREDA an inheritance of $30 million. This is known as an advance fee scheme and is used primarily by Nigerian scammers. The victim is promised a large amount of money, however, there are numerous fees associated with releasing the funds which must be paid in advance. PEREDA became convinced she was going to receive a large inheritance from a

2

person she had never met, and she continued to pay the escalating fees. Once PEREDA had exhausted her own finances, she recruited "investors" to continue paying the fees. However, PEREDA admitted she was worried nobody would believe the Facebook story, so she made up various stories to tell investors to make the scenario more believable.

7.    FBI Special Agents subsequently spoke with numerous individuals who stated that PEREDA had solicited money from them. Witnesses relayed that PEREDA either told them that she needed to borrow money to purchase property and/or that she was set to inherit several million dollars from close, personal friends who had passed away and needed money to pay advance-fees associated with the inheritance. Most of the witnesses also noted that as a reward for loaning her money, PEREDA promised them several times the amount of the loan in return once she received her inheritance. PEREDA called the individuals who loaned her money investors and sent most of them updates on the status of the inheritance via WhatsApp. PEREDA did not keep the money given to her but continued to wire it off-island according to directions she received from the scammers. To date, the total loss of money by Guam based victims is over $2.1 million.

8.    Witness interviews and other evidence shows that PEREDA enlisted a few close friends and family members to help her send victims' money out of Guam. PEREDA's most notable and effective assistant was Sally Roberto ("ROBERTO"), a friend and former co-worker of PEREDA. ROBERTO acknowledged that she "invested" money with PEREDA as well as wired money as directed by PEREDA to a variety of accounts located in the continental United States (CONUS). ROBERTO also stated she was aware PEREDA was lying to investors but continued to help collect and wire money in hopes of getting her own money back.

3

9.     A search of PEREDA's and several of her victims' communication devices
revealed numerous WhatsApp messages sent by PEREDA to her investors. A search of
PEREDA's phone also revealed multiple WhatsApp messages sent to PEREDA from
individual(s) directing PEREDA to collect specific amounts of money according to certain
timelines and then send the money to a variety of particular CONUS-based bank accounts. A
WhatsApp account registered to 1-204-400-1932 and labeled on PEREDA's phone as
"Guillermo CNB" directed PEREDA to wire funds to 24 separate accounts between June 2019
and October 2019. These include specified accounts registered to: MYTHIC TRADE LLC,
JONES REPUBLIC LLC, and RICHLAND CONCEPTS LLC.

10.     Analysis of PEREDA's and ROBERTO's financial records verified that PEREDA
and/or ROBERTO wired funds to the directed accounts. Analysis of financial and
communication documents as well as interviews of identified money mules and a "mule-herder"
(an individual who recruits and manages money mules) also indicate that several individuals
directing PEREDA and/or receiving money from PEREDA were likely based in, or originate
from, Nigeria. Details of the interviews and information provided are contained below.
Additionally, two telephone numbers used by PEREDA's confederates are voice over internet
protocol (VOIP) numbers whose log-ins resolved to IP addresses primarily in either Nigeria or
New York. Financial records substantiate that initial and/or subsequent accounts through which
victims' money flowed are/were owned by individuals of Nigerian descent. Specifically, bank
accounts to which PEREDA was directed by GUILLERMO CNB to send money had significant
connections with Nigerians including ONYEBACHUM KELVIN OSEJI (OSEJI), and
MARCUS UNIGWE (UNIGWE) dba RICHLAND CONCEPTS.

4

11.     In December 2019, United States Secret Service Special Agent (SA) Jayme

Raglin of the Dallas, TX Secret Service Office, contacted the FBI to inquire about the FBI's

ongoing case against PEREDA. Raglin stated he was working a fraud complaint concerning a

victim who wired money to a bank account for a business called JONES REPUBLIC LLC with a

registered owner in Carrollton, TX, a suburb of Dallas. Of note, JONES REPUBLIC LLC is one

of several companies to which GUILLERMO CNB directed PEREDA to send money. SA Raglin

located and interviewed Monique JONES, the registered owner of JONES REPUBLIC LLC at

her residence in Carrollton. During his interview with Monique JONES, SA Raglin determined

Monique's daughter Mekayda JONES was the registered owner of MYTHIC TRADE LLC, also

registered in Carrollton, TX, another company to which GUILLERMO CNB directed PEREDA

to send money. Based upon the information SA Raglin had available to him at the time, SA

Raglin assessed that Monique and Mekayda JONES were operating JONES REPUBLIC LLC

and MYTHIC TRADE LLC as money mule accounts.

12.     Monique JONES told SA Raglin that she was recruited to move money by Kelvin

Oseji ("OSEJI"), who she met at a local bar in the Dallas, TX area frequented by Nigerian

clientele. After working with OSEJI for a period of time, Monique introduced OSEJI to her

daughter Mekayda, who also began moving money at OSEJI's direction as well as began a

romantic relationship with OSEJI. In return for their assistance moving money, Monique and

Mekayda received a percentage of the money.

13.     In August 2019, OSEJI's visa expired and he left Dallas and returned to South

Africa. Mekeyda JONES provided a contact number for OSEJI and your affiant conducted

several interviews via telephone with OSEJI about his involvement in the advance fee scheme

5

outlined above. OSEJI stated when he moved to the United States, he was recruited by individuals in Nigeria to assist in various wire fraud schemes, of which the PEREDA scheme was one. OSEJI stated he was in contact with several Nigerian individuals in the Atlanta, GA area who were also involved in multiple fraud schemes. Additionally, OSEJI would coordinate the currency exchange and final distribution of stolen funds to end recipients in Nigeria. OSEJI stated all communication was either over phone or using messaging applications, primarily WhatsApp. OSEJI stated instructions on who was to send money and where were given over WhatsApp by the ring members in Atlanta as well as ring leaders in Nigeria.

14.     FBI analysis of MYTHIC TRADE LLC and JONES REPUBLIC LLC account records at JP Morgan Chase bank, headquartered in New York City ,NY, verified receipt of wire transfers from PEREDA and ROBERTO into these respective accounts. These records also document the use of the MYTHIC TRADE account to transfer money to OSEJI. Between 02/11/2019 and 09/30/2019, PEREDA and ROBERTO collectively wired a total of $945,290 to accounts associated with OSEJI and the JONES' family. Between 03/20/2019 and 07/25/2019, those same accounts transferred $883,300 to accounts associated with UNIGWE and RICHLAND CONCEPTS LLC registered in Duluth, GA, a suburb of Atlanta, GA. Examples showing the flow of Guam victim money to UNIGWE are below:

- On 5/14/2019 ROBERTO wired $30,000.00 to JONES REPUBLIC LLC and on 5/14/2019, JONES REPUBLIC debited $26,000.00 to RICHLAND CONCEPTS;

- On 5/16/2019 PEREDA wired $50,000.00 to JONES REPUBLIC LLC and on 5/16/2019, JONES REPUBLIC debited $44,000.00 to RICHLAND CONCEPTS;

6

- On 5/20/2019 PEREDA wired $17,150.00 to JONES REPUBLIC LLC and on 5/20/2019, JONES REPUBLIC debited $15,000.00 to RICHLAND CONCEPTS;

- On 5/28/2019 ROBERTO wired $20,000.00 to JONES REPUBLIC LLC and on 5/28/2019, JONES REPUBLIC debited $18,000.00 to RICHLAND CONCEPTS;

- On 6/5/2019 ROBERTO wired $55,000.00 to JONES REPUBLIC LLC and on 6/5/2019, JONES REPUBLIC debited $49,500.00 to RICHLAND CONCEPTS;

- On 6/12/2019 ROBERTO wired $25,000.00 to JONES REPUBLIC LLC and on 6/12/2019, JONES REPUBLIC debited $22,500.00 to RICHLAND CONCEPTS;

- On 6/17/2019 PEREDA wired $35,500.00 to JONES REPUBLIC LLC and on 6/17/2019, JONES REPUBLIC debited $31,950.00 to RICHLAND CONCEPTS;

- On 6/21/2019 PEREDA wired $32,000.00 to JONES REPUBLIC LLC and on 6/21/2019, JONES REPUBLIC debited $28,800.00 to RICHLAND CONCEPTS;

- On 7/5/2019 ROBERTO wired $23,000.00 to JONES REPUBLIC LLC and on 7/5/2019, JONES REPUBLIC debited $20,700.00 to RICHLAND CONCEPTS.

15.    Further, analysis of UNIGWE's/RICHLAND CONCEPTS' JP Morgan Chase bank accounts show forty-six (46) wire transfers from RICHLAND CONCEPTS LLC to UBAN PLC's Citibank Account 36320321 totaling $2,182,892 between 02/25/2019 and 07/17/2019. UBAN PLC's Citibank account is a correspondent account for the United Bank of Africa headquartered in Lagos, Nigeria.

16.    Based on statements from OSEJI and the analysis of financial records, the FBI has identified the following individuals as being involved in multiple wire fraud schemes to include the PEREDA scheme:

7

- Marcus UNIGWE
  - Apple ID: marcusunigwe@icloud.com - 10190492555
  - Apple ID: unigwemarcus@icloud.com – 16597187871
- Victoria JAMES
  - Apple ID: veejames0@gmail.com - 11241448593
- Onyebachum Kelvin OSEJI
  - Apple ID: kelvin4love49@yahoo.com - 8342115137
  - Apple ID: josephwayne702@gmail.com - 11060044793
  - Apple ID: swpm1@icloud.com – 11331473241
- Evelyn Adesuwa ADONOR
  - Apple ID: adonorevelyn@yahoo.com - 1501975843
- Victor Ugochukwu OGU
  - Apple ID: maskaya@icloud.com : 10012744264
- Adekanmi Olaolu ADEDIRE
  - Apple ID: kadedire4u2nv@yahoo.co.uk - 1325313820
  - Apple ID: kanmi.adedire@gmail.com - 1378932207
- Kimberly WELLS
  - Apple ID: kimberly.wells@yahoo.com - 1650859605
  - Apple ID: coderedmgmt@yahoo.com - 8095243329
  - Apple ID: kaywellscoach@icloud.com - 17330363014
- Muideen DAUDA
  - Apple ID: kanyee_dee@yahoo.com - 1737064307
  - Apple ID: autonbeyond@gmail.com - 1812635025

8

- o  Apple ID: daudamuideen@yahoo.com - 10970217464

- Akeem AMODU

  - o  Apple ID: akeemamodu@icloud.com - 471370298

  - o  Apple ID: Keemykeem22@gmail.com - 705844576

  - o  Apple ID: starremix5@gmail.com - 1611206872

17.     All of the above-referenced individuals listed in Paragraph 16 have multiple suspicious activity reports from financial institutions involving suspect wire transfers. Additionally, there is evidence of money moving between them and to common foreign bank accounts. For example, JAMES, UNIGWE, ADEDIRE, and OGU have all made multiple, large wire transfers totaling in excess of at least $5 million USD to the same accounts held at UBAN PLC and STERLING PLC, both correspondent accounts held at Citibank in New York City, NY, and both correspondent accounts for Nigeria based financial institutions.

18.     These co-conspirators use encrypted messaging applications to coordinate their criminal activities. Because WhatsApp is user-to-user encrypted, a subpoena or search warrant to WhatsApp would not allow collection of content which could be used to identify methods, co-conspirators, and fruits of the crime. However, if an individual has an iCloud account and they choose to back-up their WhatsApp communication, this back-up is stored in an unencrypted format. Therefore, a search warrant for iCloud content could provide unencrypted communication between members of the criminal organization. A subpoena issued to Apple Inc, revealed the above individuals do in fact have the above respective iCloud accounts. A preservation letter has not been sent.

9

## INFORMATION REGARDING APPLE ID AND iCLOUD[1]

19.      Apple is a United States company that produces the iPhone, iPad, and iPod Touch, all of which use the iOS operating system, and desktop and laptop computers based on the Mac OS operating system.

20.      Apple provides a variety of services that can be accessed from Apple devices or, in some cases, other devices via web browsers or mobile and desktop applications ("apps").  As described in further detail below, the services include email, instant messaging, and file storage:

      a.      Apple provides email service to its users through email addresses at the domain names mac.com, me.com, and icloud.com.

      b.      iMessage and FaceTime allow users of Apple devices to communicate in real-time.  iMessage enables users of Apple devices to exchange instant messages ("iMessages") containing text, photos, videos, locations, and contacts, while FaceTime enables those users to conduct video calls.

      c.      iCloud is a file hosting, storage, and sharing service provided by Apple. iCloud can be utilized through numerous iCloud-connected services, and can also be used to store iOS device backups and data associated with third-party apps.

      d.      iCloud-connected services allow users to create, store, access, share, and synchronize data on Apple devices or via icloud.com on any Internet-connected device.  For

---

[1]      The information in this section is based on information published by Apple on its website, including, but not limited to, the following document and webpages: "U.S. Law Enforcement Legal Process Guidelines," available at http://images.apple.com/privacy/docs/legal-process-guidelines-us.pdf; "Create and start using an Apple ID," available at https://support.apple.com/en-us/HT203993; "iCloud," available at http://www.apple.com/icloud/; "iCloud: iCloud storage and backup overview," available at https://support.apple.com/kb/PH12519; and "iOS Security," available at http://images.apple.com/privacy/docs/iOS_Security_Guide.pdf.

example, iCloud Mail enables a user to access Apple-provided email accounts on multiple Apple devices and on icloud.com. iCloud Photo Library and My Photo Stream can be used to store and manage images and videos taken from Apple devices, and iCloud Photo Sharing allows the user to share those images and videos with other Apple subscribers. iCloud Drive can be used to store presentations, spreadsheets, and other documents. iCloud Tabs enables iCloud to be used to synchronize webpages opened in the Safari web browsers on all of the user's Apple devices. iWorks Apps, a suite of productivity apps (Pages, Numbers, and Keynote), enables iCloud to be used to create, store, and share documents, spreadsheets, and presentations. iCloud Keychain enables a user to keep website username and passwords, credit card information, and Wi-Fi network information synchronized across multiple Apple devices.

   e.  Game Center, Apple's social gaming network, allows users of Apple devices to play and share games with each other.

   f.  Find My iPhone allows owners of Apple devices to remotely identify and track the location of, display a message on, and wipe the contents of those devices.

   g.  Location Services allows apps and websites to use information from cellular, Wi-Fi, Global Positioning System ("GPS") networks, and Bluetooth, to determine a user's approximate location.

   h.  App Store and iTunes Store are used to purchase and download digital content. iOS apps can be purchased and downloaded through App Store on iOS devices, or through iTunes Store on desktop and laptop computers running either Microsoft Windows or Mac OS. Additional digital content, including music, movies, and television shows, can be purchased through iTunes Store on iOS devices and on desktop and laptop computers running either Microsoft Windows or Mac OS.

11

21.     Apple services are accessed through the use of an "Apple ID," an account created during the setup of an Apple device or through the iTunes or iCloud services.  A single Apple ID can be linked to multiple Apple services and devices, serving as a central authentication and syncing mechanism.

22.     An Apple ID takes the form of the full email address submitted by the user to create the account; it can later be changed.  Users can submit an Apple-provided email address (often ending in @icloud.com, @me.com, or @mac.com) or an email address associated with a third-party email provider (such as Gmail, Yahoo, or Hotmail).  The Apple ID can be used to access most Apple services (including iCloud, iMessage, and FaceTime) only after the user accesses and responds to a "verification email" sent by Apple to that "primary" email address. Additional email addresses ("alternate," "rescue," and "notification" email addresses) can also be associated with an Apple ID by the user.

23.     Apple captures information associated with the creation and use of an Apple ID. During the creation of an Apple ID, the user must provide basic personal information including the user's full name, physical address, and telephone numbers.  The user may also provide means of payment for products offered by Apple.  The subscriber information and password associated with an Apple ID can be changed by the user through the "My Apple ID" and "iForgot" pages on Apple's website.  In addition, Apple captures the date on which the account was created, the length of service, records of log-in times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to and utilize the account, the Internet Protocol address ("IP address") used to register and access the account, and other log files that reflect usage of the account.

12

24.     Additional information is captured by Apple in connection with the use of an Apple ID to access certain services.  For example, Apple maintains connection logs with IP addresses that reflect a user's sign-on activity for Apple services such as iTunes Store and App Store, iCloud, Game Center, and the My Apple ID and iForgot pages on Apple's website.  Apple also maintains records reflecting a user's app purchases from App Store and iTunes Store, "call invitation logs" for FaceTime calls, and "mail logs" for activity over an Apple-provided email account.  Records relating to the use of the Find My iPhone service, including connection logs and requests to remotely lock or erase a device, are also maintained by Apple.

25.     Apple also maintains information about the devices associated with an Apple ID. When a user activates or upgrades an iOS device, Apple captures and retains the user's IP address and identifiers such as the Integrated Circuit Card ID number ("ICCID"), which is the serial number of the device's SIM card.  Similarly, the telephone number of a user's iPhone is linked to an Apple ID when the user signs in to FaceTime or iMessage.  Apple also may maintain records of other device identifiers, including the Media Access Control address ("MAC address"), the unique device identifier ("UDID"), and the serial number.  In addition, information about a user's computer is captured when iTunes is used on that computer to play content associated with an Apple ID, and information about a user's web browser may be captured when used to access services through icloud.com and apple.com.  Apple also retains records related to communications between users and Apple customer service, including communications regarding a particular Apple device or service, and the repair history for a device.

13

26.     Apple provides users with five gigabytes of free electronic space on iCloud, and users can purchase additional storage space. That storage space, located on servers controlled by Apple, may contain data associated with the use of iCloud-connected services, including: email (iCloud Mail); images and videos (iCloud Photo Library, My Photo Stream, and iCloud Photo Sharing); documents, spreadsheets, presentations, and other files (iWorks and iCloud Drive); and web browser settings and Wi-Fi network information (iCloud Tabs and iCloud Keychain). iCloud can also be used to store iOS device backups, which can contain a user's photos and videos, iMessages, Short Message Service ("SMS") and Multimedia Messaging Service ("MMS") messages, voicemail messages, call history, contacts, calendar events, reminders, notes, app data and settings, and other data. Records and data associated with third-party apps may also be stored on iCloud; for example, the iOS app for WhatsApp, an instant messaging service, can be configured to regularly back up a user's instant messages on iCloud. Some of this data is stored on Apple's servers in an encrypted form but can nonetheless be decrypted by Apple.

27.     In my training and experience, evidence of who was using an Apple ID and from where, and evidence related to criminal activity of the kind described above, may be found in the files and records described above. This evidence may establish the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or, alternatively, to exclude the innocent from further suspicion.

28.     For example, the stored communications and files connected to an Apple ID may provide direct evidence of the offenses under investigation. Based on my training and

14

experience, instant messages, emails, voicemails, photos, videos, and documents are often created and used in furtherance of criminal activity, including to communicate and facilitate the offenses under investigation. As described above, the use of messaging applications allows for the coordination of identified criminal activity and will allow investigators to prove intent to defraud victims as well as identify co-conspirators.

29.     Account activity may also provide relevant insight into the account owner's state of mind as it relates to the offenses under investigation.  For example, information on the account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

30.     Other information connected to an Apple ID may lead to the discovery of additional evidence.  For example, the identification of apps downloaded from App Store and iTunes Store may reveal services used in furtherance of the crimes under investigation or services used to communicate with co-conspirators.  In addition, emails, instant messages, Internet activity, documents, and contact and calendar information can lead to the identification of co-conspirators and instrumentalities of the crimes under investigation.

31.     Therefore, Apple's servers are likely to contain stored electronic communications and information concerning subscribers and their use of Apple's services.  In my training and experience, such information may constitute evidence of the crimes under investigation including information that can be used to identify the account's user or users, who the individual communicates with, evidence of the intent to defraud, as well as the methods used to move money throughout the criminal network.

15

**INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED**

32.     I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Apple to disclose to the government copies of the records and other information (including the content of communications and stored data) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

**CONCLUSION**

33.     Based on the forgoing, I request that the Court issue the proposed search warrant.

34.     This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711(3), and 18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A). Specifically, the Court is "a district court of the United States that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

35.     Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

**REQUEST TO SEAL, ORDER NON-DISCLOSURE, AND KEEP ACCOUNT ACTIVE**

36.     I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of

this investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize the investigation.

37.     Pursuant to 18 U.S.C. § 2705(b), I further request the Court order Apple not to notify any other person of the existence of this warrant for a period of ninety (90) days from service of Attachments A & B.  Notification of the existence of the warrant will seriously jeopardize the ongoing investigation.

38.     Because the investigation is ongoing, I further request the Court to order Apple to continue to maintain email account and iCloud storage account of the following AppleIDs in an open and active status:

- marcusunigwe@icloud.com - 10190492555
- unigwemarcus@icloud.com – 16597187871

**FURTHER AFFIANT SAYETH NAUGHT.**

_____

DAVID ANDERSON
Special Agent
Federal Bureau of Investigation

17

# ATTACHMENT A

## Property to Be Searched

This warrant applies to information associated with the email account and iCloud storage of:

- **marcusunigwe@icloud.com - 10190492555**
- **unigwemarcus@icloud.com – 16597187871**

(the "account") that is stored at premises owned, maintained, controlled, or operated by Apple Inc., a company headquartered at Apple Inc., 1 Infinite Loop, Cuptertino, CA 95014.

1

## ATTACHMENT B

### Particular Things to be Seized

**I.      Information to be disclosed by Apple**

To the extent that the information described in Attachment A is within the possession, custody, or control of Apple, including any messages, records, files, logs, or information that have been deleted but are still available to Apple, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Apple is required to disclose the following information to the government, in unencrypted form whenever available, for each account or identifier listed in Attachment A:

a.      All records or other information regarding the identification of the account, to include full name, physical address, telephone numbers, email addresses (including primary, alternate, rescue, and notification email addresses, and verification information for each email address), the date on which the account was created, the length of service, the IP address used to register the account, account status, methods of connecting, and means and source of payment (including any credit or bank account numbers);

b.      The contents of all emails associated with the account, from January 1, 2016 to the present date, including stored or preserved copies of emails sent to and from the account (including all draft emails and deleted emails), the source and destination addresses associated with each email, the date and time at which each email was sent, the size and length of each email, and the true and accurate header information including the actual IP addresses of the sender and the recipient of the emails, and all attachments;

c.      The contents of all instant messages associated with the account, from January 1, 2016 to the present date, including stored or preserved copies of instant messages (including

1

iMessages, SMS messages, and MMS messages) sent to and from the account (including all draft and deleted messages), the source and destination account or phone number associated with each instant message, the date and time at which each instant message was sent, the size and length of each instant message, the actual IP addresses of the sender and the recipient of each instant message, and the media, if any, attached to each instant message;

        d.      The contents of all files and other records stored on iCloud, including all iOS device backups, all Apple and third-party app data, all files and other records related to iCloud Mail, iCloud Photo Sharing, My Photo Stream, iCloud Photo Library, iCloud Drive, iWorks (including Pages, Numbers, and Keynote), iCloud Tabs, and iCloud Keychain, and all address books, contact and buddy lists, notes, reminders, calendar entries, images, videos, voicemails, device settings, and bookmarks;

        e.      All files, keys, or other information necessary to decrypt any data produced in an encrypted form, when available to Apple (including, but not limited to, the keybag.txt and fileinfolist.txt files).

## II.  Information to be seized by the government

All information described above in Section I that constitutes evidence, instrumentalities, and/or fruits of violations of 18 U.S.C. §§1343, 1349, and 1956 involving Apple IDs: marcusunigwe@icloud.com – 10190492555 and unigwemarcus@icloud.com – 16597187871.

From January 1, 2016 to the present date, including, for each account or identifier listed on Attachment A, information pertaining to the following matters:

      a.    The identity of the person(s) who created or used the Apple ID, including records that help reveal the whereabouts of such person(s);

      b.    Evidence indicating how and when the account was accessed or used, to determine the chronological and geographic context of account access, use and events relating to the crime under investigation and the account subscriber;

      c.    Any records pertaining to the means and source of payment for services (including any credit card or bank account number or digital money transfer account information);

      d.    Evidence indicating the subscriber's state of mind as it relates to the crime under investigation; and

      e.    Evidence that may identify any co-conspirators or aiders and abettors, including records that help reveal their whereabouts.

      f.    Evidence indicating preparatory steps taken in furtherance of the scheme, including identification of money mules, mid-level money managers, and final destination accounts/individuals of illicit funds.

      g.    Communications between members of the criminal organization indicating knowledge of scheme and intent to defraud.

3

This warrant authorizes a review of electronically stored information, communications, and other records and information disclosed pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

## III.     By Order of the Court

1.     Pursuant to 18 U.S.C. § 2705(b), the Court orders Apple not to notify any person of the existence of this warrant for ninety (90) days from service of Attachments A & B.

2.     Because the investigation is ongoing, I further request the Court to order Apple to continue to maintain email account and iCloud storage account of the following Apple IDs in an open and active status:

- marcusunigwe@icloud.com - 10190492555
- unigwemarcus@icloud.com – 16597187871

4